Michael Patrick Doyle (# 029400)
Patrick M. Dennis (# 029533)
**DOYLE DENNIS LLP**
3401 Allen Pkwy., Suite 100
Houston, Texas 77019
Phone: (480) 447-2494
Fax: (713) 571-1148
service@doylelawfirm.com
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Fernando Castillo Robles,<br><br>Plaintiff,<br><br>v.<br><br>American Zurich Insurance Company,<br><br>Defendant. | Case No. CV-19-05863-PHX-DJH<br><br>**JOINT PROPOSED FINAL PRETRIAL ORDER** |

The following Joint Proposed Final Pretrial Order is to be considered at the Final Pretrial Conference set for June 28, 2022.

**A. TRIAL COUNSEL FOR THE PARTIES**

Plaintiff:
Michael Patrick Doyle (State Bar No. 029400)
Patrick M. Dennis (State Bar No. 029533)
DOYLE DENNIS LLP
3401 Allen Parkway, Suite 100
Houston, Texas 77019
Ph: (713) 571-1146
Fax: (713) 571-1148
Email: service@doylelawfirm.com
*Attorneys for Plaintiff*

Defendant

Kelly A. Hedberg (#024934)
**JABURG & WILK, PC**
3200 N. Central, Ste. 2000
Phoenix, Arizona 85012
(602) 248-1000
kah@jaburgwilk.com
*Attorneys for Defendant*

**B. STATEMENT OF JURISDICTION**

Jurisdiction in this case is based on diversity of citizenship under Title 28 U.S.C. § 1332.

Jurisdiction is not disputed.

**C. Nature of the Case**

Plaintiff Fernando Castillo Robles alleges that Defendant American Zurich Insurance Company violated the duty of good faith and fair dealing by denying his workers' compensation claim and benefits, arising from an injury suffered at work. As a result of the denial of his claim, Plaintiff alleges that American Zurich Insurance Company caused him to suffer physical, financial, and mental damages. Defendant American Zurich Insurance Company denies it breached the duty of good bad faith and fair dealing and alleges that the claim was handled reasonably. Defendant American Zurich Insurance Company further denies Plaintiff suffered any physical, financial or mental damages resulting from the alleged conduct.

**D. STIPULATIONS AND UNDISPUTED FACTS AND LAW.**

**The following material facts are admitted by the parties and require no proof:**

1. On November 7, 2017, Plaintiff Fernando Castillo Robles was an employee of JBS Holdings.

2. American Zurich Insurance Company provided workers' compensation insurance to JBS Holdings.

3. Sedgwick Claims Management Services, Inc. and Shelly Stephens, handled Plaintiff's claim on behalf of American Zurich Insurance Company.

**The following facts, although not admitted, will not be contested at trial by evidence to the contrary:**

**None.**

**The following issues of law are uncontested and stipulated to by the parties:**

**None.**

**E. CONTESTED ISSUES OF FACT AND LAW**

**A. The following are the material issues of fact to be tried and decided:**

**ISSUE 1: Whether American Zurich Insurance Company breached the duty of good faith and fair dealing.**

**Plaintiff contends:**

Plaintiff contends that American Zurich Insurance Company, including by and through its third-party administrator, Sedgwick, and its adjusters, including Shelly Stephens, failed to conduct a reasonable investigation of his claim, ignored the wealth of medical and other evidence that confirmed coverage and the need of benefits and income benefits, and wrongfully denied his claim, without reasonable basis.

**Defendant contends:**

To establish bad faith mishandling of his claim for benefits, Plaintiff must show that Defendant's handling of his claim was unreasonable and that Defendant intended to act unreasonably toward him. *Echanove v. Allstate Ins. Co.*, 752 F.Supp.2d 1105, 1110

(D. Ariz. 2010); *see also Noble v. National Am. Life Ins. Co.*, 128 Ariz. 188, 624 P.2d 866, 868 (1981) (holding a plaintiff must show the absence of a reasonable basis for denying benefits and that the insurance company either knew or recklessly disregarded the fact that it did not have a reasonable basis for denying benefits.) It is a two prong test.

The first prong of the test for bad faith is an objective test based on reasonableness. *Trus Joist Corp. v. Safeco. Ins. Co.*, 153 Ariz. 95, 735 P.2d 125, 134 (App.1986). “[W]hen there is a question of fact as to liability on the underlying policy, then as a matter of law, the insurance company is not liable for bad faith.” *Knoell v. Metro. Life Ins. Co.*, 163 F. Supp. 2d 1072, 1075 (D. Ariz. 2001). It is the claimant's burden to prove all elements of a compensable claim. *Toto v. Indus. Comm'n*, 144 Ariz. 508, 512, 698 P.2d 753, 757 (App.1985). `To be compensable, a work-related incident must result in an injury. A.R.S. § 23-1021; *see also Yates v. Indus. Comm'n*, 116 Ariz. 125, 127 (App. 1977). Medical causation is established by showing that the accident caused the injury. *Grammatico v. Indus. Comm'n*, 211 Ariz. 67, 71, ¶ 15, 117 P.3d 786, 790 (2005); *DeSchaaf v. Indus. Comm'n of Arizona*, 141 Ariz. 318, 320, 686 P.2d 1288, 1290 (App. 1984). Not every minor injury is compensable. *Yates*, 116 Ariz. at 128. To be cognizable under worker's compensation law, an injury must be accompanied by some loss or expense. *Id*.

An objective look at Plaintiff’s claim (when presented) exhibited several “red flags” *e.g.* (1) different dates of injury; (2) additional body parts; (3) failure to treat for six months; (4) failure to report for six months (5) resolution of initial injury; (6) FMLA leave for unrelated conditions; and (7) no loss or expense incurred. Plaintiff’s worker’s compensation counsel agreed that when a claim exhibits “red flags,” that it requires additional investigation.

Defendant contends that it undertook a reasonable investigation in response to Plaintiff’s claim for back, shoulder and neck injuries resulting from the November 7, 2017 incident. As a result of its investigation, Defendant discovered Plaintiff had a prior

automobile accident and treated for neck and back issues. Ultimately, the ICA found Plaintiff's complaints for neck, shoulder and back pain to be unrelated to the industrial injury. In addition, the ICA denied Plaintiff's request for surgical intervention as related to the industrial event. Plaintiff lacks evidence of what relevant facts were missed from Defendant's alleged failure to adequately investigate. "An insurance company's failure to adequately investigate only becomes material when a further investigation would have disclosed relevant facts." *Aetna Cas. & Sur. Co. v. Superior Court In & For County of Maricopa*, 161 Ariz. 437, 440, 778 P.2d 1333, 1336 (App. 1989); *citing Pace v. Insurance Co. of North America*, 838 F.2d 572, 584 (1st Cir.1988) ("Although an insurer's subjective bad faith may be inferred from a flawed investigation, an improper investigation, standing alone, is not a sufficient cause for recovery if the insurer in fact had an objectively reasonable basis to deny the claim.") *See* Defendant's Motion in Limine #4.

The second prong is a subjective test. *Trus Joist Corp.*, 735 P.2d at 134. Thus, Plaintiff must show that the insurance company committed "consciously unreasonable conduct." *Id.* "Consciously unreasonable conduct" requires that the insurance company either acted knowing it was acting unreasonably or acted with sufficiently reckless disregard of the fact that it did not have a reasonable basis for failing to pay benefits that knowledge can be imputed to it. *Id.* Therefore, Plaintiff must have evidence to establish that Defendant had no reasonable basis for its handling of his claim *and* that Defendant knew the manner of its handling was not supported by a reasonable basis. *Zilisch v. State Farm Mut. Auto. Ins. Co.*, 196 Ariz. 234, 238, 995 P.2d 276, 2280 (2000) (to survive summary judgment on bad faith claim plaintiff has to point to evidence that the insurer "acted unreasonably and knew it").

Evidence of the insurer's intentions are important, because "[s]ome form of consciously unreasonable conduct is required" to sustain a bad faith claim. *Trus Joist Corp.* 735 P.2d at 134 [emphasis added]. Proof of "consciously unreasonable conduct"

requires evidence of the insurer's knowledge that it is acting improperly or of reckless conduct which permits such knowledge to be imputed to it. *Id.* It is not unreasonable for an insurer to request information to investigate coverage for its insured. *Desert Mountain Properties Ltd. P'ship v. Liberty Mut. Fire Ins. Co.*, 225 Ariz. 194, 216, 236 P.3d 421, 443 (Ariz. Ct. App. 2010) *aff'd*, 226 Ariz. 419, 250 P.3d 196 (2011).

As demonstrated above, Plaintiff's claim was not clearly compensable from the outset. At the time of the denial, the nurse notes indicated that Plaintiff's left shoulder complaint had resolved without loss or expense. The medical records at the time of denial diagnosed Plaintiff with a neck strain and degenerative back conditions, which the ICA ultimately held not to have been related to the left shoulder incident. Similarly, Plaintiff had waited over six months before seeking medical care after the November incident. There is no evidence that Defendant pursued a course of action that was consciously unreasonable. Even to a lay person, on its face, this claim warranted additional investigation and Defendant's pursuit of the truth cannot be said to have been consciously unreasonable.

**Issue #2: Whether Plaintiff suffered damages:**

**Plaintiff contends:**

Plaintiff contends that American Zurich Insurance Company's wrongful denial of income and medical benefits (caused him to suffer physical, mental, and financial damages.

**Defendant contends:**

Defendant contends that there was no wrongful denial of Plaintiff's claim. Defendant further contends that he did not suffer damages resulting from Defendant's denial. There is no evidence Defendant's denial was causally related to any physical, mental or financial damages. *See* Defendant's Motion in Limine # 1 and 5.

Issue # 3: Whether Zurich had a reasonable basis to deny Plaintiff's claim?

Plaintiff contends: On the very first day of Mr. Robles's claim, Defendant denied the claim without completing a reasonable investigation and without evidence to support a denial.[1] Instead, Zurich, through adjuster Shelly Stephens, ignored the incident report and onsite medical documentation that confirmed the work injury, failed to complete an investigation (never interviewing Mr. Robles, co-workers, or onsite medical providers),[2] immediately set up an adversarial hoop for Robles to jump through – an IME,[3] and simply tagged Mr. Robles's claim for a fraud investigation (based upon the wishes of an employer who had a large exposure on the claim because of a sizeable self-insured retention).[4] This is bad faith.

Further explaining Defendant's conduct, Zurich, through its assigned third-party administrator Sedgwick Claims Management Services, established an arbitrary incentive to motivate its adjusters to close claims.[5] Zurich then tied an ad hoc "hero award" and Adjuster Shelly Stephens's annual bonus, in part, to her ability to meet that arbitrary metric.[6] As described in *Demetrulias*, *Zilisch*, and *Swift*, Arizona law holds that it is bad faith for an insurer to set arbitrary goals tied to financial incentives that incentivize an adjuster to ignore the individual facts of each claim.[7] Even more on point, in *Swift* and *Demetrulias*, this District denied summary judgment in a worker's compensation bad faith claim based on the exact same claims-close ratio that Zurich used in this case – a 100% closing ratio.[8] For this reason alone, summary judgment should be denied.

---

1 Deposition of Stephens at 59:19-24.

2 See e.g. Deposition of Stephens at 71:24- 72:6 and Summary Judgment Exhibit 8.

3 Summary Judgment Exhibit 10

4 Summary Judgmenet Exhibit 8 and 9.

5 Second Deposition of Shelly Stephens at 34:5-10.

6 Id. at 34:16-35:7.

7 *Demetrulias v. Wal-Mart Stores*, 917 F. Supp. 2d 993 (D. Ariz. 2013); *Zilisch v. State Farm Mutual Auto. Ins.*, 196 Ariz. 234 (2000); *Swift v. Wesco Ins. Co.*, No. CV-18-01531-PHX-RM, 2020 U.S. Dist. LEXIS 122354*14-15 (D. Ariz. July 10, 2020).

8 *Compare* Exhibit 2 at 34:5-10 *with Swift*, CV-18-01531-PHX-RM, 2020 U.S. Dist. LEXIS 122354 at *14-15 (same) and *Demetrulias*, 917 F. Supp. 2d at 1010 (same).

In addition, Defendant also failed to conduct a reasonable investigation. Far from it, adjuster Shelly Stephens denied Robles' claim the same day that Zurich assigned her the claim.[9] Even more so, as part of her handling of the claim, Stephens did not even attempt to interview Mr. Robles.[10] "This indifference to getting the injured worker's version [of events] is an indicator of bias to the investigation."[11] Coupled with her failure to interview Robles, Stephens also failed to interview Robles' supervisor or witnesses to the injury.[12] But as opposed to a neutral, independent and unbiased investigation, Stephens instead allowed Robles' employer – JBS Holdings – to procure witness statements. Not surprisingly, the employer only provided an incomplete and biased statement from the supervisor – they claimed that Robles was "full of cr@p."[13] This position that Defendant adopted from JBS particularly was problematic because Robles's injury was documented thoroughly in an incident report and multiple medical notes that demonstrated onsite medical treatment for Robles's injuries.

In addition, allowing Robles' employer to investigate and participate in the claim was particularly problematic in this case because JBS maintained a $5 million self-insured retention.[14] In addition, JBS had previously taken a hostile approach to Robles' claim, including demanding that Stephens "seriously investigate" the claim.[15]

Defendant contends:

Defendant contends that it had a reasonable basis to deny Plaintiff's workers' compensation claim because initially, the November 7, 2017 event did not appear to be anything more than a minor incident requiring first aid. By the time the claim was reported

---

[9] First Deposition of Shelly Stephens at 59:19-24.
[10] Id. at 71:24-72:6.
[11] Summary Judgment Exhibit 1, Declaration of Elliott Flood at pg. 9.
[12] Summary Judgment Exhibit 8.
[13] Summary Judgment Exhibit 8.
[14] Summary Judgment Exhibit 1, Declaration of Elliott Flood at pg. 8; see also Summary Judgment Exhibit 3 at SROBELS00056.
[15] Summary Judgment Exhibit 9.

to Defendant, there was an over six-month delay reporting and seeking treatment for the incident. When Plaintiff filed his Notice of Claim, he was reporting injuries to his neck, back and shoulder, which was in direct contrast to the initial report of a resolved shoulder injury. Plaintiff's medical records only diagnosed him with a neck strain and degenerative back conditions. Throughout its investigation, Plaintiff was not forthcoming with his medical history and was an inaccurate historian. Defendant obtained Plaintiff's medical records documenting significant prior issues with his neck and back. Ultimately, Plaintiff's neck and back complaints were deemed not causally related to the industrial event. *See also*, Defendant's Position on Issue #1, incorporated herein; and Defendant's Motion in Limine # 5.

Issue #4: Whether Zurich knew that it acted without a reasonable basis or failed to perform an investigation or evaluation sufficient to determine whether its action was supported by a reasonable basis?

Plaintiff contends: Defendant failed to act reasonably throughout Plaintiff's claim, including as described above. Plaintiff incorporates the summary described above.

Defendant contends:

Defendant contends that it had a reasonable basis to deny Plaintiff's workers' compensation claim because initially the November 7, 2017 event did not appear to be anything more than a minor incident requiring first aid. By the time the claim was reported to Defendant, there was an over six-month delay reporting and seeking treatment for the incident. When Plaintiff filed his Notice of Claim, he was reporting injuries to his neck, back and shoulder, which was in direct contrast to the initial report of a minor shoulder injury. Plaintiff's medical records only diagnosed a neck strain and degenerative back conditions. Throughout its investigation, Plaintiff was not forthcoming with his medical history and was an inaccurate historian. Defendant obtained Plaintiff's prior medical

records documenting significant prior issues with his neck and back. Ultimately, Plaintiff's neck and back complaints were deemed not causally related to the industrial event. *See also*, Defendant's Position on Issues #1 and 3, incorporated herein; and Defendant's Motion in Limine # 5.

Issue #5: Whether Plaintiff failed to mitigate his damages?

Plaintiff contends: Plaintiff's damages were caused by Defendant's wrongful denial and delay of benefits that were owed. Because of Defendant's conduct, Plaintiff went without benefits and suffered physical, emotional, and financial damages. Plaintiff's treating physician, Dr. Scott, has further confirmed that Defendant's conduct caused significant damages. Plaintiff acted reasonably throughout his claim and did not fail to mitigate his damages.

Defendant contends:

Defendant contends that Plaintiff failed to seek timely medical treatment. Defendant further contends that Plaintiff was able to seek treatment while his workers' compensation claim was denied using his private medical insurance. Defendant also contends that Plaintiff failed to mitigate his damages by not going back to work for JBS when they would have accommodated his work restrictions paying him the same wage. Defendant also contends that it offered to settle with Plaintiff while the claims for neck, back and shoulder surgery were pending and Plaintiff refused. Ultimately, the ICA denied surgical intervention for the neck, back and shoulder issues and Plaintiff was awarded no benefits. The ICA declared that Plaintiff's shoulder injury had resolved without permanent impairment.

Issue #6: Whether Plaintiff's claim when presented contained sufficient evidence supporting both legal and medical causation?

Plaintiff contends: Plaintiff disputes that this is an issue for the jury. The Industrial Commission of Arizona has already determined that Plaintiff presented sufficient evidence supporting legal and medical causation. That issue is res judicata. Plaintiff incorporates his Motion in Limine No. 1.

Defendant contends:

Defendant contends that at the time he presented his claim, there was insufficient evidence supporting a compensable claim. Plaintiff's medical records did not support an industrial event. The records from the November 7, 2017 incident did not align with the injuries Plaintiff was claiming were work-related.

B. The following are the issues of law to be determined:

Issue #1: Whether the claim was fairly debateable, as a matter of law, precluding bad faith from reaching the jury?

Plaintiff contends:

This issue is a rehash of Defendant's already-denied motion for summary judgment. In its motion, Defendant argued that Mr. Robles' claim was "fairly debatable." But to support this argument, Defendant largely cited to cases pre-dating *Zilisch*. To be clear, in *Zilisch*, the Arizona Supreme Court explained that the fairly debatable standard does not immunize the insurer from its duty to investigate the claim promptly, provide equal consideration to its insured, and not low-ball the insured.[16] As such, an insurer cannot refuse to provide equal consideration to its insured simply because the insurer argues that the claim is fairly debatable. In fact, the Supreme Court explicitly held that these obligations exist regardless if a claim is fairly debatable.

> The court of appeals focused exclusively on the amount ultimately offered by the carrier and said that everything else was irrelevant. But coming up with an amount that is within the range of possibility is not an absolute defense to a bad faith case. **The carrier has an obligation to immediately**

[16] *Id.* at 238.

> **conduct an adequate investigation, act reasonably in evaluating the claim, and act promptly in paying a legitimate claim**. It should do nothing that jeopardizes the insured's security under the policy. It should not force an insured to go through needless adversarial hoops to achieve its rights under the policy. It cannot lowball claims or delay claims hoping that the insured will settle for less. **Equal consideration of the insured requires more than that.** The court of appeals therefore erred in concluding that fair debatability is both the beginning and the end of the analysis.[17]

Following that holding, District Courts in Arizona have noted that "**fair debatability" of the insurer's coverage decision is not sufficient to defeat a bad-faith claim**."[18] Instead, the *Jeffers* Court further relied on *Zilisch* to find that "bad-faith liability extends not only to coverage decisions, but to any instances where the insurer (1) acted unreasonably 'in the investigation, evaluation, and processing of the claim' and (2) 'either knew or was conscious of the fact that its conduct was unreasonable.'"[19] Finally, the Court found that "both elements present fact questions ordinarily reserved for the jury."[20]

Defendant contends:

Defendant contends that at a minimum the issue of compensability was 'fairly debatable as a matter of law and bad faith should not be tried to this jury. In its Motion for Summary Judgment, Defendant raised the fairly debateable issue. (Doc. 86)

In determining whether the insurance company acted reasonably in a case premised on failure to pay benefits, the Court considers whether the insurer's liability under the policy was "fairly debatable." *Deese v. State Farm Mut. Auto. Ins. Co*., 172 Ariz. 504, 838 P.2d 1265, 1268 (1992). Under the first prong, Defendants can challenge claims that are fairly debatable without having acted in bad faith. *See Clearwater v. State Farm Mut. Auto. Ins. Co*., 164 Ariz. 256, 792 P.2d 719, 723 (1990). In other words, when a claim is

---

[17] *Id.*
[18] *Jeffers v. Farm Bureau Prop. & Cas. Ins. Co*., 2:12-cv-02444 JWS, 2014 U.S. Dist. LEXIS 120212 (D. Ariz. August 28, 2014).
[19] *Id.*
[20] *Id.*

fairly debatable, the insurance company cannot be liable for acting in bad faith by declining to pay such claim immediately. *Lasma Corp. v. Monarch Ins. Co.*, 159 Ariz. 59, 764 P.2d 1118, 1122 (1988). As long as insurer acts honestly, on adequate information and does not place paramount importance on its own interest, it should not be held liable for breach of the duty of good faith and fair dealing because of a good-faith mistake in performance or judgment. *Rawlings v. Apodaca*, 151 Ariz. 149, 726 P.2d 565 (1986).

**F. WITNESSES LIST**

Each party shall *separately* list the names of witnesses,[21] their address, whether they are fact or expert witnesses, and a brief description of the testimony of each witness. The witnesses shall be grouped as follows:

Plaintiff anticipates that all of the following witnesses **will** be called at trial.

| **Name** | **Objection** |
|---|---|
| Fernando Castillo Robles<br>c/o<br>Doyle LLP<br><br>Plaintiff will testify about his initial injury, his interactions with Defendant, his medical treatment, the delay in payment of benefits, and the damages he suffered from the wrongful actions of Defendant. | |
| Elliott Flood<br>Elliott S. Flood Company<br>8300 Adirondack Trail<br>Austin, Texas 78759<br>(512) 366-5297<br><br>Mr. Flood is Plaintiff's liability expert. He will testify regarding the ways Defendant departed from industry | |

[21] The parties shall not list witnesses which will be used *only* for impeachment purposes.

| | |
|---|---|
| standards in the way the claim was handled and that the delay in payment of benefits was not reasonable. | |
| Shelly Stephens<br>By and through her attorney of record:<br>c/o Kelly Hedberg<br><br>Defendant's Adjuster will testify regarding his handling of the claim and delay in payment of benefits to Ndwiga. | |
| Jacob Brejcha<br>By and through his attorney of record:<br>c/o Kelly Hedberg<br><br>Shelly Stephens's supervisor. | |
| X. Alexander Carpio<br>Snow, Carpio & Weekley PLC<br>55 East Thomas Road<br>Phoenix, Arizona 85012<br>(602) 532-0700<br><br>Plaintiff's attorneys before the ICA. They will testify about all aspects of the way the claim was improperly handled and denied. | |
| Jeffrey D. Scott, M.D.<br>Palo Brea Pain & Rehabilitation<br>3417 N. 32nd Street<br>Phoenix, AZ 85018<br>(602)368-3600<br><br>Dr. Scott is Plaintiff's treating physician. He will testify about the need of treatment and Plaintiff's damages. Plaintiff would refer to his declaration. | |
| Abhishiek Sharma, M.D.<br>Atlas Neurosurgery and Spine Center<br>2222 E. Highland Avenue, Suite 222<br>Phoenix, AZ 85016<br>(602)975-0123 | |

| | |
|---|---|
| Dr. Sharma is Plaintiff's treating physician. He will testify about the need of treatment and Plaintiff's damages. Plaintiff would refer to his declaration. | |
| Erika Castillo- Plaintiff's Daughter<br>2007 N 88th Ave.<br>Phoenix, AZ 85037<br>(602)486-5949<br><br>Plaintiff's daughter will be called to testify regarding the impacts, including pain, emotional distress, and loss of enjoyment of life, they saw on Plaintiff from the wrongful investigation and delay in payment of benefits. | Defendant objects to this witness to the extent their testimony is cumulative and unnecessarily prolongs trial or irrelevant. |
| Melissa Castillo- Plaintiff's Daughter<br>7545 W Crittenden Lane<br>Phoenix, AZ 85033<br>(623)500-9417<br><br>Plaintiff's daughter will be called to testify regarding the impacts, including pain, emotional distress, and loss of enjoyment of life, they saw on Plaintiff from the wrongful investigation and delay in payment of benefits. | Defendant objects to this witness to the extent their testimony is cumulative and unnecessarily prolongs trial or irrelevant. |
| Fernando Castillo- Plaintiff's Son<br>6002 W Catalina Dr.<br>Phoenix, AZ 85033<br>(480)254-7681<br><br>Plaintiff's son will be called to testify regarding the impacts, including pain, emotional distress, and loss of enjoyment of life, they saw on Plaintiff from the wrongful investigation and delay in payment of benefits. | Defendant objects to this witness to the extent their testimony is cumulative and unnecessarily prolongs trial or irrelevant. |
| Eduardo Gutierrez – Plaintiff's Grandson<br>5039 N 57th Ave. Apt#129<br>Glendale, AZ 85301 | Defendant objects to this witness to the extent their testimony is |

| | |
|---|---|
| (323)598-1455<br><br>Plaintiff's grandson will be called to testify regarding the impacts, including pain, emotional distress, and loss of enjoyment of life, they saw on Plaintiff from the wrongful investigation and delay in payment of benefits. | cumulative and unnecessarily prolongs trial or irrelevant. |
| Vanessa Alvarez- Plaintiff's Daughter-in-Law<br>3034 N 52nd Pkwy<br>Phoenix, AZ 85031<br>(480)849-4799<br><br>Plaintiff's daughter-in-law will be called to testify regarding the impacts, including pain, emotional distress, and loss of enjoyment of life, they saw on Plaintiff from the wrongful investigation and delay in payment of benefits. | Defendant objects to this witness to the extent their testimony is cumulative and unnecessarily prolongs trial or irrelevant. |
| Corporate representative of American Insurance Company<br>c/o<br>Counsel for Defendant<br><br>Defendant may be called to testify regarding its handling of Plaintiff's claim, all aspects of liability, and net worth. | Defendant objects to the identity of this witness as improperly and untimely disclosed. |
| | |

**Defendant:**

| **NAME** | **OBJECTION** |
|---|---|
| Shelly Stephens (fact)<br>c/o Kelly A. Hedberg<br><br>Stephens is expected to testify concerning her handling of Plaintiff's worker's compensation | |

| | |
|---|---|
| claim. Stephens is also expected to testify regarding her interactions with Plaintiff, interactions with his employer, information relied upon throughout the claim as the basis for her decisions, interactions with Plaintiff's medical providers and knowledge of Plaintiff's history of medical treatment. Stephens will further testify as to her experience as a workers' compensation claim professional. It also expected that Stephens will testify consistent with any deposition testimony and if not, explain why she is unable to do so. | |
| David Lopez (fact)<br>c/o JBS<br>651 S 91st Ave,<br>Tolleson, AZ 85353<br>(623) 936-7177<br><br>Lopez is expected to testify concerning his knowledge of Plaintiff's injury, treatment, JBS protocol for reporting work-related injuries, Plaintiff's FMLA leave, Plaintiff's job duties in May 2018 through November 2018, his interactions with Plaintiff before and after his work related injury was reported, efforts to accommodate Plaintiff's work restrictions and bring him back to JBS on light duty. Lopez is also expected to testify concerning his interactions with Plaintiff, Stephens, and any other JBS employees related to Plaintiff's workers' compensation claim or FMLA leave. It also expected that Lopez will testify consistent with | |

| | |
|---|---|
| any deposition testimony and if not, explain why he is unable to do so. | |
| Anthony (Tony) Rickoff (fact)<br><br>c/o JBS<br>651 S 91st Ave,<br>Tolleson, AZ 85353<br>(623) 936-7177<br><br>Rickoff is expected to testify concerning his knowledge of Plaintiff's injury, treatment, JBS protocol for reporting work-related injuries, Plaintiff's FMLA leave, Plaintiff's job duties in May 2018 through November 2018, his interactions with Plaintiff before and after his work related injury was reported, efforts to accommodate Plaintiff's work restrictions and bring him back to JBS on light duty and meeting with union representatives concerning the same. Rickoff is also expected to testify concerning his interactions with Plaintiff, Stephens, and any other JBS employees related to Plaintiff's workers' compensation claim or FMLA leave. It also expected that Rickoff will testify consistent with any deposition testimony and if not, explain why he is unable to do so. | |
| Laura Shaide (fact)<br>c/o JBS<br>651 S 91st Ave,<br>Tolleson, AZ 85353<br>(623) 936-7177 | |

| | |
|---|---|
| Shaide is expected to testify concerning his knowledge of Plaintiff's injury, treatment, JBS protocol for reporting work-related injuries and treatment, Plaintiff's FMLA leave, her interactions with Plaintiff before and after his work related injury was reported and protocol for nursing care provided on site. Shaide is also expected to testify concerning her interactions with Plaintiff, Stephens, and any other JBS employees related to Plaintiff's workers' compensation claim or FMLA leave. It also expected that Shaide will testify consistent with any deposition testimony and if not, explain why she is unable to do so. | |
| Carol Watkins, DC (fact)<br>c/o Penny Injury Chiropractic<br><br>Watkins is likely to testify concerning her examination of Plaintiff, Plaintiff's reported complaints of pain during her treatment, her opinions after examination and her medical training to render such opinions. Watkins is also expected to testify regarding her interactions with Plaintiff and Plaintiff's history of medical treatment. It also expected that Watkins will testify consistent with any deposition testimony and if not, explain why she is unable to do so. | |
| William Spiegel (expert)<br>c/o Kelly A. Hedberg<br><br>Mr. Spiegel is expected to testify consistent with his expert report | |

| | |
|---|---|
| dated September 8, 2020 and the materials he relied upon to prepare and formulate the same. | |
| Dr. Edward Dohring, MD (expert)<br>c/o Spine Institute of Arizona<br>9735 N 90th Pl,<br>Scottsdale, AZ 85258<br>(602) 953-9500<br><br>Dr. Dohring is a board certified orthopaedic surgeon and fellowship spine surgeon practicing medicine with the Spine Institute of Arizona. Dr. Dohring is expected to present and the facts and opinions more completely set forth in his report dated September 19, 2019, and the information relied on to formulate the same. Dr. Dohring will testify that he saw no treatment recommended by Dr. Scott related to Plaintiff's industrial injury that Plaintiff did not receive. | |
| Dr. Amit Sahasrabudhe<br>c/o Arizona Sports Medicine<br>8630 East Vía de Ventura #105<br>Scottsdale, AZ 85258<br>(480) 889-1838<br><br>Dr. Sahasrabudhe is an orthopedic surgeon specializing in sports medicine surgery and fracture care, as well as evaluating and managing injuries and pain of the shoulder, elbow, wrist, and knee. He is board certified and fellowship trained in sports medicine and arthroscopic surgery. Dr. Sahasrabudhe is expected to present and the facts and opinions more completely set | |

| | |
|---|---|
| forth in his report dated October 3, 2018, and the information relied on to formulate the same. | |
| | |

B. Each party hereby acknowledges by signing this Joint Proposed Final Pretrial Order that it is responsible for ensuring that the witnesses it wishes to call to testify are subpoenaed. Each party further understands that any witness a party wishes to call shall be listed on that party's list of witnesses; the party cannot rely on the witness having been listed or subpoenaed by another party.

## G. EXHIBIT LISTS

1. The following exhibits are admissible in evidence and may be marked in evidence by the Courtroom Deputy: None

2. As to the following exhibits, the parties have reached the following stipulations: None

3. The party against whom the following exhibits are to be offered objects to the admission of the exhibit and offer the objection stated below:

**Plaintiff**

| **No.** | **Description** | **Objection** | **Admitted in Evidence** |
|---|---|---|---|
| 1 | Elliot Flood – CV | Foundation. | |
| 2 | Dr. Jeffrey Scott - CV | Foundation. | |
| 3 | Claim Notes (SROBLES00001-58) | Foundation, relevance, hearsay. | |

| | | | |
|---|---|---|---|
| 4 | Notice of Claim Status, 7/3/2018 | Foundation. | |
| 5 | Decision Upon Hearing and Findings and Award for Compensable Claim, 4/11/2019 | Hearsay, foundation, Rule 403 | |
| 6 | Decision Upon Review, 6/21/2019 | Hearsay, foundation, relevance, Rule 403. | |
| 7 | Notice of Claim Status, 7/15/2019 | Foundation, relevance. | |
| 8 | ICA Notification of Claim | Foundation, relevance, hearsay. | |
| 9 | Incident Report, 11/9/17 | Foundation, relevance, hearsay. | |
| 10 | JBS Nurse Notes 000085 ROBLES | Foundation, relevance, hearsay. | |
| 11 | JBS Nurse Notes 000087 ROBLES | Foundation, relevance, hearsay. | |
| 12 | JBS Nurse Notes 000088 ROBLES | Foundation, relevance, hearsay. | |
| 13 | ICA Worker's Report of Injury | Foundation, relevance, hearsay. | |
| 14 | FastMed Urgent Care, 5/16/2018 | Foundation, relevance, hearsay. | |
| 15 | FastMed Urgent Care, 5/22/2018 | Foundation, relevance, hearsay. | |

| | | | |
|---|---|---|---|
| 16 | Independent Medical Evaluation, Dr. Scott, 10/5/2018 | Foundation, relevance, hearsay. | |
| 17 | SimonMed Shoulder MRI, 1/26/2019 | Foundation, relevance, hearsay. | |
| 18 | FastMed Urgent Care, 2/5/2019 | Foundation, relevance, hearsay. | |
| 19 | Dr. Scott Medical Note, 7/8/2019 | Foundation, relevance, hearsay. | |
| 20 | Employee Work Status, 7/10/2019 | Foundation, relevance, hearsay. | |
| 21 | Dr. Sharma Medical Note, 9/3/2019 | Foundation, relevance, hearsay. | |
| 22 | Dr. Amit Sahasrabudhe, MD IME, 10/3/2018 | Foundation, relevance, hearsay. | |
| 23 | Surveillance Report | Foundation, relevance, hearsay. | |
| 24 | Shelly Stephens Annual Evaluation 2018 | Foundation, relevance, hearsay. | |
| 25 | Shelly Stephens Annual Evaluation 2019 | Foundation, relevance, hearsay. | |
| 26 | Dr. Abhishiek Sharma | Foundation, relevance, hearsay. | |
| 27 | ICA File (000122-337 Robles) | Foundation, relevance, hearsay. | |
| 28 | | | |
| 29 | | | |

| | | | |
|---|---|---|---|
| 30 | | | |
| 31 | | | |
| 32 | | | |
| 33 | | | |
| 34 | | | |
| 35 | | | |
| | Demonstratives to be used at trial. | Defendant reserves all objections. Must provide copies prior to trial to lodge appropriate objections. | |

**Defendant**

| Ex. # | Date of Doc | Description | Objections |
|---|---|---|---|
| | | | |
| 50 | 08/22/02 | CA Report of Injury | Irrelevant, prejudicial, hearsay, authentication. |
| 51 | 04/28/03 | QME Rpt | Irrelevant, prejudicial, hearsay, authentication. |
| 52 | 01/19/04 | QME Rpt | Irrelevant, prejudicial, hearsay, authentication. |
| 53 | 03/17/08 | CME Rpt | Irrelevant, prejudicial, hearsay, authentication. |
| 54 | 07/10/09 | QME Rpt | Irrelevant, prejudicial, hearsay, authentication. |
| 55 | 08/19/15 | Application for Employment | Irrelevant, prejudicial, hearsay, authentication. |
| 56 | 06/06/16 | Penny Inj Chiro Recs | Irrelevant and prejudicial. |
| 57 | 11/09/17 | JBS Injury Report | No objection |
| 58 | 05/22/18 | FastMed Record | No objection |
| 59 | 06/12/18 | FastMed Record | No objection |
| 60 | 06/13/18 | Workers Report of Injury | No objection |
| 61 | 06/19/18 | Kollman email | No objection |

| | | | |
|---|---|---|---|
| 62 | 06/26/18 | ICA notification / received internally July 2, 2018 | No objection |
| 63 | 06/28/18 | Internal Sedgwick email indicating did not find claim and was requesting Form 102 from ICA and will forward | No objection |
| 64 | 07/02/18 | Letter of Representation | No objection |
| 65 | 07/02/18 | Claim Note | No objection |
| 66 | 07/02/18 | FastMed Record | No objection |
| 67 | 07/03/18 | Email exchange with employer initated by email from w/c counsel | No objection |
| 68 | 07/03/18 | Stephens email | No objection |
| 69 | 07/03/18 | Authorization to Release Medical Records | No objection |
| 70 | 07/03/18 | Notice of Claim Status | No objection |
| 71 | 07/03/18 | Claim Note | No objection |
| 72 | 07/05/18 | Claim Note | No objection |
| 73 | 07/06/18 | ISO Search | Irrelevant, prejudicial, hearsay, authentication. |
| 74 | 07/11/18 | Stephens email | No objection |
| 75 | 07/11/18 | JBS/Stephens email exchange | No objection |
| 76 | 07/11/18 | JBS/Stephens email exchange | No objection |
| 77 | 07/12/18 | Request for Hearing | No objection |
| 78 | 07/13/18 | JBS email | No objection |
| 79 | 07/16/18 | Medical Authorization signed - faxed from counsel | No objection |
| 80 | 07/17/18 | Claim Note | No objection |
| 81 | 07/17/18 | FastMed Record | No objection |
| 82 | 07/17/18 | FastMed Record | No objection |

| | | | |
|---|---|---|---|
| 83 | 07/19/18 | Medical Canvass (7/13/18) | Irrelevant, prejudicial, hearsay, authentication. |
| 84 | 07/19/18 | Inquiry Forms | Irrelevant, prejudicial, hearsay, authentication. |
| 85 | 07/20/18 | Claim Note | No objection |
| 86 | 07/20/18 | Stephens email | No objection |
| 87 | 07/23/18 | Email from JBS | No objection |
| 88 | 07/27/18 | Carpio Email | No objection |
| 89 | 07/27/18 | Email from Carpio | No objection |
| 90 | 07/31/18 | FMLA Paperwork | No objection |
| 91 | 08/01/18 | Email exchange with JBS | No objection |
| 92 | 08/06/18 | Surveillance Report | No objection |
| 93 | 08/10/18 | Surveillance Report | No objection |
| 94 | 08/15/18 | Surveillance Report | No objection |
| 95 | 08/16/18 | Carpio ltr | No objection |
| 96 | 08/17/18 | IME Notice | No objection |
| 97 | 08/23/18 | Surveillance Report | No objection |
| 98 | 08/27/18 | Surveillance Report | No objection |
| 99 | 08/29/18 | Claim Note | No objection |
| 100 | 09/04/18 | Flanigan Email | No objection |
| 101 | 09/12/18 | IME Invoice | No objection |
| 102 | 09/14/18 | Nurse Notes | No objection |
| 103 | 09/20/18 | Carpio Email | No objection |
| 104 | 09/24/18 | Claim Note | No objection |
| 105 | 10/01/18 | Email from JBS | No objection |
| 106 | 10/01/18 | B Healthy Clinic | No objection |
| 107 | 10/01/18 | FastMed Record | No objection |
| 108 | 10/02/18 | California Medical Canvass | Irrelevant, prejudicial, hearsay, authentication. |
| 109 | 10/02/18 | Flanigan Email | No objection |
| 110 | 10/05/18 | IME Rpt - Dr. Scott | No objection |
| 111 | 10/16/18 | IME Rpt - Dr. Amit | Irrelevant, prejudicial, hearsay, authentication. |
| 112 | 10/16/18 | Claim Note | No objection |
| 113 | 10/31/18 | Carpio Email | Irrelevant, prejudicial, hearsay, authentication. |
| 114 | 10/31/18 | Flanigan ltr | Irrelevant, prejudicial, hearsay, authentication. |
| 115 | 11/15/18 | Investigation Rpt | Irrelevant, prejudicial, hearsay, authentication. |

| | | | |
|---|---|---|---|
| 116 | 12/12/18 | Claim note | No objection |
| 117 | 01/03/19 | JBS Ltr | No objection |
| 118 | 01/10/19 | Carpio ltr | No objection |
| 119 | 01/11/19 | FastMed Record | No objection |
| 120 | 01/11/19 | FastMed Record | No objection |
| 121 | 01/16/19 | Claim Note | No objection |
| 122 | 02/05/19 | FastMed Record | No objection |
| 123 | 02/05/19 | Medical Record | No objection |
| 124 | 02/08/19 | Claim Note | No objection |
| 125 | 02/12/19 | Claim Note | No objection |
| 126 | 02/22/19 | FastMed Record | No objection |
| 127 | 03/01/19 | JBS Email | No objection |
| 128 | 03/05/19 | Claim Note | No objection |
| 129 | 04/10/19 | Flanigan Email | No objection |
| 130 | 04/11/19 | ICA Decision | No objection |
| 131 | 05/28/19 | Memorandum in Support of Review | Irrelevant, prejudicial, hearsay, authentication. |
| 132 | 06/19/19 | Flanigan email | No objection |
| 133 | 06/20/19 | ICA Decision | No objection |
| 134 | 07/02/19 | FastMed Record | No objection |
| 135 | 07/03/19 | Rickoff Email | No objection |
| 136 | 07/08/19 | Dr. Scott | No objection |
| 137 | 07/08/19 | Dr. Scott | No objection |
| 138 | 07/09/19 | Claim Note | No objection |
| 139 | 07/09/19 | Claim Note | No objection |
| 140 | 07/10/19 | Carpio Email | No objection |
| 141 | 07/10/19 | Dr. Scott | No objection |
| 142 | 07/12/19 | Carpio Email | No objection |
| 143 | 07/15/19 | ICA TTD Paperwork | No objection |
| 144 | 07/24/19 | Carpio Email | No objection |
| 145 | 09/19/19 | IME Dohring | Irrelevant, prejudicial, hearsay, authentication. |
| 146 | 12/04/19 | Carpio Email | No objection |
| 147 | 04/17/20 | Flanigan ltr | No objection |
| 148 | 04/27/20 | ICA Order | No objection |
| 149 | 07/20/10 | CA Compromise and Release | Irrelevant, prejudicial, hearsay, authentication. |
| 150 | | CV Spiegel | No objection |
| 151 | | CV Dr. Dohring | No objection |

| | | | |
|---|---|---|---|
| 152 | 3/23/20 | Plaintiff's Objections and Responses to American Zurich Insurance Company's First Set of Interrogatories | Plaintiff objects to this document in that it is irrelevant, prejudicial, and creates a risk of jury confusion. |
| 153 | 3/23/20 | Plaintiff's Objections and Responses to American Zurich Insurance Company's First Set of Requests for Admission | Plaintiff objects to this document in that it is irrelevant, prejudicial, and creates a risk of jury confusion. |
| 154 | 3/23/20 | Plaintiff's Objections and Responses to American Zurich Insurance Company's First Set of Requests for Production | Plaintiff objects to this document in that it is irrelevant, prejudicial, and creates a risk of jury confusion. |
| 155 | 06/18/20 | Plaintiff's Objections and Responses to American Zurich Insurance Company's Second Set of Interrogatories | Plaintiff objects to this document in that it is irrelevant, prejudicial, and creates a risk of jury confusion. |
| 156 | 06/18/20 | Plaintiff's Objections and Responses to American Zurich Insurance Company's Second Set of Requests for Admission | Plaintiff objects to this document in that it is irrelevant, prejudicial, and creates a risk of jury confusion. |

4. Each party hereby acknowledges that by signing this Joint Proposed Final Pretrial Order that any objections not specifically raised herein are waived.

## H. DEPOSITIONS TO BE OFFERED

**Plaintiff's Designations:**

| Plaintiffs' Designations | Objection to Plaintiff's Deposition Excerpt |
|---|---|
| **Carol Watkins** | |
| 5:3-5:18 | |
| 14:22-14:25 | |
| 15:1-15:4; 15:7-15:25 | 15:2-16:6 – Calls for speculation, vague, ambiguous, lack of foundation. |
| 16:1-16:6 | |
| | |
| **Shelly Stephens Jun 18, 2020** | |
| 5:10-5:14; 5:19-5:24 | |
| 6:4-6:11; 6:19-6:25 | |
| 7:1-7:2; 7:20-7:25 | |
| 8:1-8:2 | |
| 9:16-9:24 | |
| 11:6-11:8; 11:10; 11:15-11:25 | |
| 12:1-12:5; 12:7-12:12; 12:14-12:25 | 12:4-7 – Argumentative. 12:11-15 – Argumentative. |
| 14:3-14:12; 14:14-14:16 | 14:9-16 – Argumentative, calls for speculation, lack of foundation. |
| 16:12-16:15; 16:17-16:21; 16:23-16:25 | 16:12-19 – Asked and answered, (14:25-15:12, 15:17-23); 16:20-17:6 – Argumentative, calls for speculation, lack of foundation |
| 17:1; 17:3-17:6; 17:23-17:25 | |
| 18:1-18:4; 18:6-18:14 | 18:1-7 – argumentative. |
| 19:1-19:3; 19:5 | 19:1-5; lack of appropriate foundation, misstates evidence, the claim was reported to the ICA in June 2018, Defendant's first notice was July 2, 2018; if allowed read next question 19:6-18. |
| 21:13-21:23 | |
| 22:5-22:18; 22:20-22:25 | 22:16-21 – lack of foundation; 22:22-23: lack of foundation, calls for speculation, |
| 23:2-23:10; 23:12 | |

| | |
|---|---|
| 24:7-24:11; 24:13-24:19 | |
| 25:4-25:7; 25:9-25:20 | 25:4-13 – argumentative, lack of foundation, calls for speculation |
| 28:2-28:5; 28:7-28:10; 28:12-28:18; 28:20 | 28:2-20 – lack of foundation, calls for speculation, argumentative, |
| 29:13-29:15; 29:17 | 29:13-17 – vague, ambiguous, lack of foundation, calls for speculation |
| 30:14-30:17; 30:19-30:25 | 30:14-22 – compound, asked and answered (29:18-25, 30:4-10) |
| 31:2-31:8; 31:10-31:20; 31:22-31:25 | 31:4-17 – calls for a legal conclusion, lack of foundation, incomplete hypothetical, 31:18-22 – lack of foundation, vague, argumentative, |
| 32:1-32:10; 32:12-32:13 | 32:8-13 – vague, lack of foundation, incomplete hypothetical, |
| 33:11-33:17; 33:19:-33:25 | 33:11-20 – asked and answered (32:14-25) |
| 34:10-34:13; 34:15-34:16 | 34:10-16: lack of foundation, argumentative |
| 35:17-35:20; 35:22-35:23 | 35:17-23 – misstates evidence, lack of foundation, argumentative, |
| 37:1-37:6; 37:8-37:9; 37:13-37:22; 37:24-37:25 | 37:1-9 – vague, ambiguous, argumentative, lack of foundation |
| 38:1; 38:16; 38:18-38:19 | 37:18-38:1 – lack of foundation, argumentative; if allowed read next question (38:2-15); 38:16-19 – lack of foundation, argumentative, incomplete response; if allowed read complete answer (38:20-23) |
| 41:7-41:10; 41:12-41:17; 41:19-41:24 | |
| 42:1-42:2; 42:4-42:10; 42:12-42:19 | |
| 43:7-43:14; 43:23-43:25 | |
| 44:1-44:7; 44:9-44:19; 44:24-44:25 | 44:24-45:3 – Argumentative; |
| 45:1; 45:3-45:15; 45:17-45:25 | |
| 46:1-46:3; 46:5-46:10; 46:19-46:22; 46:24-46:25 | 46:19-47:3 – Misstates evidence; if allowed read (47:15-48:6) |
| 47:1-47:14 | |

| | |
|---|---|
| 48:9-48:12; 48:14-48:25 | |
| 49:1-49:11; 49:13-49:23 | |
| 50:5-50:7; 50:9-50:10 | 50:5-10 – Lack of foundation, misstates evidence, argumentative |
| 51:15-51:18; 51:20-51:21; 51:25 | |
| 52:1-52:2; 52:4-52:9; 52:11-52:13; 52:25 | 51:25-52:6 – lack of foundation, calls for speculation; 52:7-13 – vague, lack of foundation, calls for legal conclusion, incomplete hypothetical, |
| 53:1-53:3; 53:12-53:15; 53:17 | |
| 54:3-54:6; 54:8-54:23 | |
| 55:20-55:25 | |
| 56:1-56:7 | |
| 57:6-57:7; 57:9-57:13 | |
| 59:2-59:4; 59:6-59:9; 59:19-59:24 | |
| 60:5-60:8 | |
| 61:13-61:15; 61:17-61:18; 61:21- 61:24 | |
| 62:25 | |
| 63:1-63:2; 63:4-63:9; 63:11-63:17; 63:19 | |
| 65:2-65:3; 65:5-65:15 | |
| 66:2-66:11 | |
| 67:3-67:6; 67:8-67:12; 67:14 | |
| 68:21-68:25 | |
| 69:1-69:8 | |
| 70:17-70:20; 70:22-70:25 | |
| 71:1-71:11; 71:13-71:14; 71:25 (starting w/"Does") | |
| 72:1-72:24 | |
| 73:1-73:7; 73:9-73:13; 73:22-73:23; 73:25 | |
| 74:1-74:2 | |
| 75:3-75:8; 75:10-75:11 | |
| 76:2-76:7 | |
| 77:9-77:13; 77:15-77:16 | |
| 78:1-78:6 | |
| 79:4-79:7; 79:9-79:15; 79:19-79:22 | |
| 80:7-80:21; 80:25 | |
| 81:1-81:14; 81:22-81:25 | |

| | |
|---|---|
| 82:1-82:13; 82:15-82:17 | |
| 84:18-84:23; 84:25 | 84:18-85:2 – Missates evidence, not lumbar strain, argumentative, |
| 85:1-85:7; 85:9-85:12; 85:14 | |
| 86:18-86:25 | |
| 87:2-87:3; 87:12-87:17; 87:19-87:25 | |
| 88:1-88:13; 88:15-88:24 | |
| 89:1-89:2; 89:10-89:13; 89:24-89:25 | |
| 90:1-90:2; 90:4 | |
| 92:1-92:17 | |
| 93:4-93:9; 93:11-93:16; 93:18-93:24 | |
| 94:1-94:9; 94:11-94:12 | |
| 95:22-95:25 | |
| 96:1; 96:3 | |
| 98:4(starting with "Regardless)-98:10; 98:12-98:13; 98:23-98:25 | 98:4-13 – lack of foundation, if allowed, read prior response referenced at (96:24-97:22) |
| 99:1-99:9; 99:12-99:14; 99:16-99:20 | |
| 100:1-100:2; 100:4-100:7; 100:9; 100:21-100:24 | 100:1-9 argumentative; misstates evidence, surveillance is not illegal and is an appropriate investigation tool, if allowed read (100:10-20) |
| 101:1-101:13; 101:15-101:21; 101:23-101:24 | 101:19-24 - argumentative |
| 102:9-102:19; 102:21 | 102:9-103:1 – relevance; Rule 403; misstates testimony, *see* July 30, 2020, Deponent errata form. |
| 103:1 | |
| 104:12-104:19 | 104:12-19 – relevance, Rule 403; testimony by counsel is not evidence, there is no testimony designated |
| | |
| **Shelley Stephens Aug 4, 2020** | |
| 3:19-3:24 | Relevance; Rule 403; misstates testimony, *see* July 30, 2020, Deponent errata form |

| | |
|---|---|
| 4:1-4:4; 4:12-4:20; 4:22-4:25 | Relevance; Rule 403; misstates testimony, *see* July 30, 2020, Deponent errata form |
| 5:1-5:18; 5:22-5:25 | Relevance; Rule 403; misstates testimony, *see* July 30, 2020, Deponent errata form |
| 6:1-6:8; 6:10 | Relevance; Rule 403; misstates testimony, *see* July 30, 2020, Deponent errata form, if allowed read (6:11-7-:13) |
| 7:14-7:25 | Relevance; Rule 403; misstates testimony, *see* July 30, 2020, Deponent errata form |
| 8:1-8:5; 8:7-8:8; 8:11; 8:13; 8:21-8:23 | Relevance; Rule 403; misstates testimony, *see* July 30, 2020, Deponent errata form; 8:21-23 – Relevance, Rule 403; missates evidence; no evidence deponent refused to return to deposition; if allowed read 8:25. |
| 9:8-9:16; 9:18 | Relevance; Rule 403; misstates testimony, *see* July 30, 2020, Deponent errata form |
| 11:8-11:24 | Relevance; Rule 403; misstates testimony, *see* July 30, 2020, Deponent errata form |
| 13:4-13:11; 13:13; 13:19-13:25 | 13:4-13 - Relevance; Rule 403; misstates testimony, *see* July 30, 2020, Deponent errata form |
| 14:1-14:7; 14:14-14:25 | 14:14-18 – Argumentative, relevance, Rule 403; her honesty in claims handling is not an issue in this case, its whether denial based on sufficient evidence; 14:19-25 - Relevance; Rule 403; misstates testimony, *see* July 30, 2020, Deponent errata form |
| 15:1-15:6 | Relevance; Rule 403; misstates testimony, *see* July 30, 2020, Deponent errata form, if allowed read 15:7-9 |
| 16:3-16:8; 16:10; 16:19-16:23; 16:25 | Relevance, Rule 403, if allowed read 16:11-14 |
| 20:22-20:25 | Relevance; Rule 403 |

| | |
|---|---|
| 21:1-21:13 | Relevance; Rule 403 |
| 25:2-25:14 | Relevance; Rule 403 |
| 28:21-28:25 | |
| 29:1-29:11; 29:24-29:25 | Relevance – there is no issue concerning audits, this claim was never audited, |
| 30:1-30:12; 30:24-30:25 | Relevance – there is no issue concerning audits, this claim was never audited, |
| 31:1-31:3 | Relevance – there is no issue concerning audits, this claim was never audited, |
| 33:2-33:5; 33:7-33:25 | Relevance – there is no issue concerning audits, this claim was never audited, this claim was never closed affecting the closure ratio metric |
| 34:1-34:8; 34:16-34:20 | Relevance – this claim was never closed affecting the closure ratio metric |
| 36:13-36:25 | Relevance – this claim was never closed affecting the closure ratio metric |
| 37:1(starting with "As an adjuster")-37:10; 37:12-37:22; 37:24-37:25 | Relevance – this claim was never closed affecting the closure ratio metric; 37:20-25 – calls for speculation; |
| 38:12-38:14; 38:16-38:17 | 38:12-17 – calls for speculation; |
| 39:19(starting with "Did you")-39:25 | |
| 40:1-40:2; 40:9-40:20; 40:22-40:25 | |
| 41:1-41:9; 41:11-41:12; 41:24-41:25 | |
| 42:1-42:2; 42:10(starting with "Do you")-42:20; 42:22-42:24 | |
| 43:1 | |

**Defendant's Deposition Designations:**

| Defendant's Designations | Objections to Defendant's Designations |
|---|---|
| **Shelly Stephens – vol. I** | |
| | |
| 7:3-9 | |
| 13:1-13 | |
| 14:25-15:12, 15:17-23 | Nonresponsive |
| 19:6-18 | Nonresponsive |
| 20:14-21:7 | |
| 23:13-24:6 | |
| 29:18-25 | Nonresponsive |
| 30:4-10 | Nonresponsive and lacks personal knowledge speculation regarding what JBS Holdings knew. |
| 32:14-25 | Nonresponsive |
| 36:9-25 | |
| 38:2-15 | |
| 38:24-39:10 | |
| 47:15-48:6 | |
| 51:2-14 | |
| 53:4-11 | |
| 54:24-55:2 | |
| 60:9-25 | Nonresponsive |
| 63:20-64:12 | |
| 65:18-66:1 | |
| 66:12-67:2 | |
| 67:15-68:20 | Nonresponsive |
| 69:9-70:16 | |
| 71:15-23 | |
| 73:14-21 | |
| 74:3-9 | |
| 75:18-76:1 | |
| 76:8-17 | |
| 77:17-22 | |
| 78:18-24 | |
| 82:18-22 | |

| | |
|---|---|
| 85:15-17, 85:20-22 | |
| 87:4-11 | |
| 89:14-23 | Lacks personal knowledge/speculation as to claim about Dr. Scott's medical records. |
| 90:5-91:15 | |
| 92:18-93:3 | |
| 94:13-95:19 | Speculation, nonresponsive at 95:18-19. |
| 96:4-8 | |
| 96:13-23 | |
| 96:24-97:22 | Nonresponsive |
| 98:14-22 | |
| 100:10-20 | |
| | |
| **Shelly Stephens – Vol II** | |
| | |
| | |
| 6:11-7:13 | |
| 8:25 | No question designated. |
| 9:19-10:10 | Nonresponsive 10:1-5. |
| 10:14-21 | |
| 12:4-16 | |
| 20:5-10 | |
| 29:12-15 | |
| 30:13-20 | |
| 31:4-12 | Nonresponsive |
| 32:6-13 | |
| 40:3-8 | |
| 44:14-18 | |

| **Carol Watkins** | |
|---|---|
| 5:3-18 | |
| 6:15-7:21 | |
| 8:5-14:14 | |
| | |

Each party hereby acknowledges by signing this Joint Proposed Final Pretrial Order that any deposition not listed as provided herein will not be allowed, absent showing of good cause.

## I. MOTIONS IN LIMINE

1. This case is to be tried by jury.

2. The parties shall file any motions in limine separately in accordance with the Court's instructions.

3. Each party hereby acknowledges by signing this Joint Proposed Final Pretrial Order that Motions in Limine will be filed separately and responded to in accordance with the Order Setting Final Pretrial Conference.

## J. LIST OF ANY PENDING MOTIONS

The parties will file their respective Motions in Limine within the time period specified by the Court, otherwise, none.

## K. PROCEDURES FOR EXPEDITING TRIAL

The parties have discussed procedures for expediting trial. Trial counsel are committed to ensuring that the case is presented in an efficient manner. The parties also anticipate using courtroom technology to expedite the presentation of exhibits and deposition testimony.

**L. ESTIMATED LENGTH OF TRIAL**

1 hours – Opening statements (30 minutes for Plaintiff and 30 minutes for Defendant).

10 hours - Plaintiff's case (including rebuttal, if any).

15 hours Defendant's case.

1 1/2 hours – Closing arguments (40 minutes for Plaintiff, 45 minutes for Defendant, and 5 minutes for rebuttal).

27.5 Total.

**M. JURY DEMAND**

A jury trial has been requested.

The parties stipulate the request was timely and properly made.

The parties propose a trial date at the earliest available date that is available to the Court and to the parties.

**N. PROPOSED SET OF SUPPLEMENTAL VOIR DIRE**

The parties have separately filed their Joint Voir Dire questions.

**O. Joint Proposed Jury Instructions**

The parties have separately filed their Joint Proposed Jury Instructions.

**P. Form of Verdict**

The parties have separately filed their Joint Forms of Verdict.

**Q. Recording of Proceedings**

If a party requires special services such as daily copies or real time, they should make such request no later than two (2) weeks prior to trial to Linda Schroeder at Linda_Schroeder@azd.uscourts.gov.

**R. CERTIFICATIONS**

By signing this Joint Proposed Final Pretrial Order, the undersigned counsel for each of the parties in this action do hereby certify and acknowledge the following:

1. All discovery has been completed.
2. The identity of each witness has been disclosed to opposing counsel.
3. Each exhibit listed herein (a) is in existence; (b) is numbered; and (c) has been disclosed and shown to opposing counsel.
4. The parties have complied *in all respects* with the mandates of the Court's Rule 16 Case Management Order and Order Setting Final Pretrial Conference.
5. The parties have made all of the disclosures required by the Federal Rules of Civil Procedure.
6. The parties acknowledge that once this joint Proposed Final Pretrial Order has been signed and lodged by the parties, no amendments to this Order can be made without leave of Court.

**APPROVED AS TO FORM AND CONTENT:**

*/s/Patrick M. Dennis*
______________________________
Attorney for Plaintiff

*/s/Kelly A. Hedberg*
______________________________
Attorney for Defendant

Based on the foregoing,

IT IS ORDERED that this Proposed Pretrial Order jointly submitted by the parties is hereby APPROVED and is thereby ADOPTED as the official Pretrial Order of this Court.

DATED this ____ day of _________________, 2022.

___________________________
United States District Judge