**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Fernando Castillo Robles,<br><br>              Plaintiff,<br><br>v.<br><br>American Zurich Insurance Company, et al.,<br><br>              Defendants. | No. CV-19-05863-PHX-DJH<br><br>**ORDER** |

Plaintiff filed a Complaint for Breach of the duty of Good Faith and Fair Dealing against Defendant, American Zurich Insurance Company. (Doc. 1). Pending before the Court are the parties' Motions in Limine (Docs. 97–102 and 108), to which Responses have been filed. (Docs. 109–114). The Court now issues its Orders thereon.

**I.     LAW**

"Although the Federal Rules of Evidence do not explicitly authorize in limine rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 40 n.4 (1984). Motions in limine "allow parties to resolve evidentiary disputes ahead of trial, without first having to present potentially prejudicial evidence in front of a jury." *Brodit v. Cabra*, 350 F.3d 985, 1004–05 (9th Cir. 2003) (citations omitted). However, motions which seek exclusion of broad and unspecific categories of evidence are disfavored. *See Sperberg v. Goodyear Tire and Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975). Motions in limine are "entirely within the discretion of the Court." *Jaynes Corp. v. American Safety Indem. Co.*, 2014 WL 1154180, at *1 (D. Nev. March 20, 2014) (citing *Luce*, 469 U.S. at 41–42). Importantly,

"[a] motion in limine is not the proper vehicle for seeking a dispositive ruling on a claim, particularly after the deadline for filing such motions has pass." *Hana Fin., Inc. v. Hana Bank*, 735 F.3d 1158, 1162 (9th Cir. 2013), *aff'd*, 135 S. Ct. 907, 190 (2015) (citations omitted).

Motions in limine are "provisional" in nature. *Goodman v. Las Vegas Metro. Police Dep't*, 963 F.Supp.2d 1036 (D. Nev. 2013), *aff'd in part, rev'd in part, and dismissed in part on other grounds,* 613 F. App'x 610 (9th Cir. 2015). Therefore, the Court issues its rulings on motions in limine based on the record currently before it. So, rulings on such motions "'are not binding on the trial judge [who] may always change his [or her] mind during the course of a trial.'" *Id.* (quoting *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000) (citing *Luce*, 469 U.S. at 41 (noting that in limine rulings are always subject to change, especially if the evidence unfolds in an unanticipated manner))). "'Denial of a motion in limine does not necessarily mean that all evidence contemplated by the motion will be admitted to trial. Denial merely means that without the context of trial, the court is unable to determine whether the evidence in question should be excluded.'" *Id.* (quoting *Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F.Supp.2d 844, 846 (N.D. Ohio 2004)).

**II.      DISCUSSION**

**1. Plaintiff's Motion in Limine 1 (Doc. 97); Defendant's Response (Doc. 116)**

Plaintiff's Motion in Limine No. 1 seeks an Order excluding Defendant from introducing any evidence that would dispute Mr. Robles "suffered a compensable injury and was entitled to workers' compensation benefits." (Doc. 97 at 1). Plaintiff argues the Industrial Commission of Arizona's ("ICA") decision, which found "he sustained a personal injury arising out of and in the course of employment" and awarded him benefits, constitutes "a final adjudication on the merits and is entitled to preclusive effect under Arizona law." (*Id.*) Plaintiff cites *Mendoza v. McDonalds Corporation* to support his argument, which found the trial court "was required to accord preclusive effect to the compensability determinations made by the administrative law judge in the ICA proceedings." 213 P.3d 288, 306 (Ariz. Ct. App. 2009). Defendant states that it does not

"intend to litigate Plaintiff's entitlement to workers' compensation benefits" but instead "is entitled to introduce evidence to show the reasonableness of the claims handling decisions based on the information known to it at the time." (Doc. 116 at 1). Defendant further argues "[a] jury cannot determine whether [its] conduct was reasonable if [it is] precluded from introducing evidence supporting the basis for its conduct." (*Id.* at 2).

Plaintiff brings a claim of bad faith against Defendant. A plaintiff asserting a claim for bad faith against an insurer must show "the absence of a reasonable basis for denying benefits of the policy and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim." *Noble v. Nat'l Amer. Life Ins. Co.*, 624 P.2d 866, 868 (Ariz. 1981) (internal quotation and citation omitted). The Court therefore finds that although *Mendoza* precludes Defendant from introducing evidence that disputes Plaintiff's compensable injury and benefits, it does not preclude Defendant from introducing evidence supporting whether it had a reasonable basis for its conduct. Accordingly,

**IT IS ORDERED granting** Plaintiff's Motion in Limine (Doc. 97). Defendant may not introduce evidence with the purpose of disputing that the ICA found Plaintiff sustained an on-the-job injury and was entitled to workers' compensation.

**2. Defendant's Motion in Limine No. 1 (Doc. 98); Plaintiff's Response (Doc. 109)**

Defendant seeks an order precluding Plaintiff from offering evidence of his "damage to credit" claim because he failed to disclose any evidence that he "suffered damage to his credit." (Doc. 98 at 1). Plaintiff counters that he "identified the financial credit damages caused by Zurich's wrongful delay and denial of benefits[.]" (Doc 109 at 1). He explains that he relied upon "family to loan him money to keep financially afloat[,] he had to sell his car to pay bills . . . and was forced to travel to Mexico to be able to afford medications[.]" (*Id*.)

In his Complaint, Plaintiff alleges "Mr. Robles has suffered financial harm and damage to his credit as a result of Zurich's . . . denials and repeated delays." (Doc. 1-3 at 20). Damages for loss of or injury to credit are recoverable so long as they are not

speculative or uncertain. *See Coury Bros. Ranches, Inc. v. Ellsworth*, 446 P.2d 458 (Ariz. 1968). Plaintiff does not clarify in his Complaint or in his Response how his credit history or rating has been damaged. Rather, he describes general financial loss and hardship resulting from Defendant's delayed payment of his claims, without describing how his standing among his creditors has been impacted. Moreover, if no discovery was produced related to Plaintiff's credit history being damaged, none may be produced at trial. Accordingly,

**IT IS ORDERED granting** Defendant's Motion in Limine No. 1 (Doc 98).

**3. Defendant's Motions in Limine No. 2 & 3 (Docs. 99 &100); Plaintiff's Responses (Docs. 110 & 111)**

Defendant has filed two motions in limine to preclude Plaintiff's expert, Elliott Flood, from providing opinion testimony. Mr. Flood is a former insurance company executive who now serves as an independent consultant and expert witness. (Doc. 99 at 6–17). He was retained to provide his expert opinion on "insurance industry customs, practices and standards based on [an] analysis of the records related to [Plaintiff's] claims." (*Id.*) Defendant's Motion in Limine No. 2 seeks an order precluding Mr. Flood from stating his opinion on whether Defendant acted reasonably pursuant to the industry standards and from testifying about the law governing Plaintiff's claim. Defendant's Motion in Limine 3 seeks an order precluding Mr. Flood from opining on the law governing insurance claim handling. In essence, Defendant seek to altogether preclude Plaintiff's expert, Mr. Flood, from testifying about his opinions. Though filed as evidentiary motions, these motions are more properly brought as one *Daubert* motion. *See* Fed.R.Evid. 702, 703 and 704, *see also Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579, 113 S.Ct. 2786 (1993). Though Defendant argues Mr. Flood's testimony is inadmissible, the Court must determine whether his proffered expert testimony is relevant to the issues to be tried, and if it would aid the trier of fact to understand the evidence or determine a fact issue.[1] Accordingly,

**IT IS ORDERED denying** Defendant's Motions in Limine (Docs. 99 & 100).

---

[1] There appears to be no argument as to Mr. Flood's qualifications as an expert.

- 4 -

**IT IS FURTHER ORDERED** that the Defendant shall have 14 days from the date of this Order to file a proper *Daubert* Motion and Plaintiff shall have 7 days to file a Response thereto.  No Reply is permitted.

**4. Defendant's Motion in Limine No. 4 (Doc. 101); Plaintiff's Response (Doc. 112)**

Defendant's Motion in Limine No. 4 seeks an Order precluding Plaintiff from presenting evidence or argument that it conducted an inadequate investigation of his claims. (Doc. 101 at 1).  Defendant states that the "sole support for Plaintiff's claim for inadequate investigation comes from his expert who makes general statements of indifference to an injured employees version of events indicates bias to the investigation." (*Id*. at 2).  Plaintiff retorts that Defendant's Motion seeks to rehash its summary judgment motion argument.  (Doc. 112 at 1).  The Court agrees.

In the Court's Order on Defendant's Motion for Summary Judgment,  it referenced Plaintiff's expert's statement but further noted "triable issues of fact exist as to whether Defendant acted in bad faith by failing to conduct an adequate investigation when it failed to interview Plaintiff and denied his claim on the same day it was received."  (Doc. 89 at 10).  Plaintiff provides evidence that also shows that the adjuster, Shelly Stephens, failed to complete an investigation, and never interviewed Plaintiff or employees who may have witnessed the events leading to his alleged injuries.  Thus, Plaintiff appears to be able to provide testimony, including his own, about how the investigation was handled.  Such evidence is relevant and probative of the ultimate claim of bad faith.  *See* Fed.R.Evid. 401.[2]  Moreover,  as previously determined, there is a triable issue of fact, to be determined by a jury regarding whether Defendant acted in bad faith in conducting its investigation.  Accordingly,

**IT IS ORDERED denying** Defendant's Motion in Limine (Doc. 101).

---

[2] Moreover, depending on the Court's ruling on Defendant's pending *Daubert* Motion, expert testimony may also be relevant and probative as to this issue.

**5. Defendant's Motion in Limine No. 5 & 6 (Docs. 102, 108); Plaintiff's Response (Docs. 113, 114)**

Defendant seeks an Order excluding Plaintiff's expert, Dr. Jeffrey Scott, from opining on 1) the "delay in medical treatment for Plaintiff's cervical spine, including surgery" and 2) his opinion that Plaintiff's current medical condition is related to "Defendant's claim handling for the shoulder sprain versus his well-documented degenerative cervical issues."[3] (Doc. 102 at 1, 4). Defendant argues that "the ICA has determined that Plaintiff's current complaints are not related to his industrial injury and he is not entitled to surgical intervention as a result of his industrial event." (*Id.*) Defendant argues that the ICA findings and award are "a final adjudication on the merits and [] entitled to preclusive effect under Arizona law." (*Id.* at 2). Thus, based on these findings, Defendant argues Dr. Scott should be precluded from opining on the "delay in medical treatment for Plaintiff's cervical spine, including surgery." (*Id.* at 4). Plaintiff does not address Defendant's argument about the ICA findings and instead argues Defendant's denial of treatment for approximately 18 months, until the ICA ordered it to pay benefits, is what Dr. Scott is testifying harmed him. (Doc. 113 at 2).

On April 27, 2020, the ICA adjudicated "whether [Plaintiff's] condition is medically stationary and/or whether [Plaintiff] has a permanent impairment as a result of the industrial episode." (Doc. 102-1 at 4). The ICA determined that Plaintiff suffered "no more than a scapular or shoulder sprain/strain" and was "not entitled to the surgery recommended by Dr. Sharma." (*Id.* at ¶¶ 12, 14). The ICA further concluded that Plaintiff "has not established by preponderance of evidence the need for further active medical care as a result of the industrial episode." (*Id.*)

At issue in both motions is the ICA determinations and its preclusive effect under *Mendoza*,, 213 P.3d at 306. *Mendoza* held, as a matter of law, that the trial court should

---

[3] Defendant's Motion in Limine No. 6 is virtually the same as No. 5. In No. 6, Defendant seeks an order precluding Plaintiff from presenting evidence or argument that Defendant delayed medical care for Plaintiff's industrial injury because such evidence would be misleading and confuse the issues. (Doc. 108 at 3).

- 6 -

have instructed the jury of the ICA compensability determinations. *Id.*; *see also Hawkins v. State, Dep't of Econ. Sec.*, 900 P.2d 1236, 1239–40 (Ariz. Ct. App. 1995) ("'when administrative agency acts in a judicial capacity and resolves disputed issues of fact properly before it and the parties have had an adequate opportunity to litigate,' preclusive doctrines of res judicata or collateral estoppel may bar relitigation of those issues of fact"). *Mendoza* explicitly noted, however, that the holding "should not be construed as preventing [defendant] from presenting evidence and arguing its administration of plaintiff's workers' compensation claim caused her no harm." *Id.* at 158. There, plaintiff argued she developed a pain disorder and psychological problems—not from the industrial injury—but instead, because of defendant's delay in authorizing her surgery and related treatments. *Id.* The court thus found that while defendant was not allowed to present evidence disputing the compensability determinations, "it nevertheless is entitled to present evidence and argument that its handling of plaintiff's workers' compensation claim did not proximately cause her to develop the pain disorder and psychological problems." *Id.*

Here, Plaintiff intends to have Dr. Scott testify that Defendant's delay in medical treatment until April 2019 resulted in Plaintiff's current medical condition. (Doc. 113 at 2). Defendant argues Dr. Scott should be precluded from testifying about the effect of a delay in medical care because based on Dr. Scott's testimony, the ICA found Plaintiff's current condition is attributed to his "well-documented degenerative cervical issues." (Doc. 102 at 1). The record is unclear as to what evidence the ICA relied upon in making that finding, and in so doing, whether it considered Plaintiff's proffered testimony by Dr. Scott's that his delayed care contributed to his injury. Therefore, at the Final Pretrial Conference the Court will require the parties to further expound on these matters. The Court will issue a ruling on Defendant's Motions thereafter.

Dated this 24th day of June, 2022.

Honorable Diane J. Humetewa
United States District Judge